UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TOM BRINKMAN

     Plaintiff,

v.                                                       Case No. 3:16cv422-MCR-CJK

MITCHELL-PROFFITT COMPANY,
et al.,

     Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter, involving alleged copyright infringement, is before the court on Defendants' Dispositive Motion for Summary Judgment (doc. 44), to which the plaintiff, who is proceeding *pro se*, has not responded after being afforded the opportunity to do so. Having carefully reviewed defendants' motion, the evidence of record, and the applicable law, the undersigned recommends defendants' motion be granted.

I.     Background

This is an action for violation of the Digital Millennium Copyright Act ("DMCA"), copyright infringement, and breach of contract. In the 1980s, plaintiff created artwork depicting various military insignia. Plaintiff contracted with Dixie

Seal & Stamp Company ("Dixie") for the exclusive manufacture of license plates containing plaintiff's artwork. Defendant Mitchell-Proffitt Company ("MPC") is a company that does business primarily with military exchanges by wholesaling a variety of military memorabilia, including license plates.[1] MPC is a wholesaler and does not manufacture, reproduce, or imprint license plates. MPC publishes an annual printed catalog from which its retail customers can order products, but it otherwise does not sell any of its products directly to the public. MPC maintains a website, but customers are not able to purchase products online.

On October 8, 1995, plaintiff offered MPC his entire inventory of license plates. MPC accepted and paid plaintiff $26,771.00. In connection with the purchase, plaintiff authorized defendants to manufacture additional license plates through Dixie. Plaintiff failed to mention he had an agreement with Dixie that required Dixie to provide him notice before manufacturing license plates for any third parties, including MPC. When MPC attempted to replenish its inventory through Dixie, Dixie refused, citing its agreement with plaintiff. Plaintiff thereafter refused to permit Dixie to manufacture the license plates unless he received royalty payments on every license plate produced. Obligated to fulfill ongoing contracts with various

---

[1] Defendant Patricia Nettles is the president of MPC, and David Nettles, according to plaintiff, is a director.

military exchanges, MPC entered into a royalty agreement whereby plaintiff would receive a royalty on each license plate manufactured ("the Royalty Agreement"). The agreement did not specify the copyright notice to be used on the plates or otherwise address copyright management information ("CMI").

Pursuant to the Royalty Agreement, MPC manufactured license plates containing plaintiff's artwork and affixed MPC's copyright notice. In 2011, plaintiff began sending cease and desist letters to MPC's customers despite the fact plaintiff had been receiving royalties on the customers' license plates. MPC advised plaintiff it had sold the license plates to the customers, hoping the disclosure would resolve the matter. Plaintiff nevertheless filed suit in 2012, alleging defendants violated his exclusive rights of reproduction and distribution with regard to 3 pieces of artwork.

The parties resolved the 2012 litigation. Pursuant to the settlement agreement ("the 2013 Agreement"), MPC was prohibited from "produc[ing], marketing, advertising, s[elling] and distribut[ing]" license plates depicting the 3 works ("Works 1 through 3"). MPC also was required to return to plaintiff all inventory of license plates depicting those works in MPC's "possession, custody or control." MPC returned the inventory as required, but before doing so, it destroyed the license plates by striking them with an axe to ensure they would not enter the stream of commerce.

Case No. 3:16cv422-MCR-CJK

Page 4 of 13

MPC also removed license plates bearing Works 1 through 3 from its website.[2]

The 2013 Agreement allowed MPC to continue selling any remaining inventory regardless of the form of copyright notice on the license plates. In the event MPC requested license plates depicting plaintiff's artwork be manufactured after April 19, 2013, MPC was required to ensure Dixie marked the newly manufactured plates with plaintiff's copyright notices. Plaintiff released all claims against MPC through April 19, 2013, including claims related to MPC's prior sales of the works and its affixation of its copyright notice on existing plates containing plaintiff's artwork.

In 2015 and 2016, plaintiff discovered that various retail outlets were selling license plates bearing 24 pieces of his work, including Works 1 through 3, both online and in stores. Plaintiff assumed, based on the passage of time since the 2013 Agreement and his belief retail stores would not retain inventory that long, that MPC had breached the 2013 Agreement and infringed/manipulated his CMI. Plaintiff thus brought this suit, alleging copyright violations and breach of contract with regard to 24 pieces of work.

---

[2] Images depicting Works 1-3 were removed from MPC's website between November 2011 and February 2012 in a two-step process by removing the image file depicting the license plate from the files accessible to the website and then reviewing the public-facing website to ensure the image files could not be accessed by a website visitor to the public-facing site.

Defendants have moved for summary judgment, arguing plaintiff has failed to raise a genuine issue of material fact with regard to any of his claims because the undisputed evidence shows plaintiff released all claims regarding conduct prior to April 19, 2013, and defendants have not caused to be manufactured, advertised, or sold any license plates bearing plaintiff's work since that date other than MPC's existing inventory of Works 4 through 24, as agreed. According to defendants, the only plates in existence that contain plaintiff's artwork and MPC's copyright notice were manufactured well prior to April 19, 2013, and thus cannot serve as the basis of plaintiff's claims.

II. Discussion

A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere

existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *Id.* Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995).

Generally, for purposes of summary judgment, a court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). Nevertheless, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" *Vega v. Invesco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could

reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (*citing Anderson*, 477 U.S. at 251).

    B.    Plaintiff's Claims

        1.    DMCA

Section 1202 of the DMCA protects the integrity of CMI by prohibiting the intentional alteration of a copyright owner's CMI and falsification of CMI on a copyright owner's work as a means to carry out or conceal infringement. 17 U.S.C. § 1202. Plaintiff asserts defendants falsified, removed, and/or altered CMI by placing MPC's name on license plates displaying plaintiff's artwork "subsequent to the settlement" of the 2012 litigation. To establish defendants violated Section 1202, plaintiff must show defendants either falsified, removed, or altered CMI with the requisite level of intent. Plaintiff has failed to make such a showing.

Because of the 2013 Agreement, affixation of an MPC copyright notice on a license plate containing plaintiff's artwork is actionable only if MPC affixed its notice to the license plate on or after April 19, 2013. There is no evidence this occurred. The undisputed evidence shows MPC has not caused license plates depicting Works 1 through 3 to be manufactured since 2011, well before entering into the 2013 Agreement. The last time the works were published in MPC's print catalog

was 2012, and MPC last sold license plates bearing Works 1 through 3 in the Spring of 2012. In his deposition, plaintiff acknowledged receiving license plates that were "stricken through" and admitted that, to his knowledge, he had received all license plates depicting Works 1 through 3 in MPC's possession, custody, and control.

MPC has not caused the manufacture of any items depicting Works 4 through 24 since the 2013 Agreements. In fact, MPC has not caused Works 5, 10, 13–15, 17–18, 20, and 23–24 to be manufactured since 2006. MPC last caused license plates bearing Work 12 to be manufactured in 2009; license plates bearing Works 11, 16, and 19 to be manufactured in 2011; license plates bearing Works 6, 7, 8, 21, and 22 to be manufactured in 2012; and license plates bearing Works 4 and 9 to be manufactured in 2013, all by Dixie. MPC has never asked or authorized anyone other than Dixie to manufacture license plates depicting Works 1 through 24, and, since the 2013 Agreements, MPC has not asked or authorized Dixie to manufacture license plates depicting these works.

After conclusion of discovery, the undisputed evidence, including plaintiff's deposition testimony, shows plaintiff's claims rest entirely on his observation of license plates bearing his work and MPC's copyright notice for sale in stores and on the Internet after the 2013 Agreements. Notably, however, plaintiff admitted in his

Page 9 of 13

deposition he is not aware of when any of those products were manufactured or sold or whether defendants removed or altered any copyright information from them. Based on the unrefuted evidence of record, there is no genuine issue of material fact with regard to plaintiff's DMCA claims, and summary judgment is warranted as a matter of law.

    2.    Copyright Act

Section 106 of the Copyright Act grants copyright owners the exclusive right to reproduce the copyrighted work, prepare derivatives, distribute copies to the public, perform the work publicly, display the work publicly, and, in the case of sound recordings, perform the work publicly by means of a digital audio transmission. 17 U.S.C. § 106. To establish copyright infringement, plaintiff must prove ownership of a valid copyright and copying of protectable elements. *Home Design Servs. v. Turner Heritage Homes, Inc.*, 101 F. Supp. 3d 1201, 1211-12 (N.D. Fla. 2015) (*quoting Miller's Ale House Inc. v. Boynton Carolina Ale House*, LLC, 702 F. 3d 1312, 1325 (11th Cir. 2012)). The first prong, which defendants do not dispute, is established by proof of a valid copyright registration. *See Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010) (*citing Bateman v. Mnemonics, Inc.*, 79 F. 3d 1532, 1541 (11th Cir. 1996)). To satisfy the second prong,

plaintiff "must establish, as a factual matter, that the alleged infringer actually copied plaintiff's copyrighted material." *Latimer*, 601 F. 3d at 1232-33 (*citing Bateman*, 79 F.3d at 1541).

Plaintiff alleges defendants reproduced, distributed, and displayed Works 1 through 3 after the 2013 Agreement. Plaintiff's copyright claims fail for the same reasons his DMCA claims fail – the undisputed evidence shows defendants have not been in possession of license plates depicting Works 1 through 3 since the 2013 Agreements and have not caused to be manufactured or sold license plates depicting Works 1 through 24 and containing MPC's copyright notice since before April 19, 2013. Summary judgment thus is warranted with respect to plaintiff's copyright infringement claims. *See e.g., Oravec v. Sunny Isles Luxury Ventures*, L.C., 527 F. 3d 1218 (11th Cir. 2008); *Lil'Joe Wein Music, Inc. v. Jackson*, 245 F. App'x 873, 876 (11th Cir. 2007) (granting summary judgment where it is clear that the plaintiff cannot make out the elements of a claim of copyright infringement); *Hoehling v. Universal Studios, Inc.*, 618 F.2d 972, 977 (2d Cir. 1980) (granting summary judgment in copyright cases finding that such remedy puts a "swift end to meritless litigation" and "avoid[s] lengthy and costly trials").

3.     Breach of Contract

For the same reasons plaintiff has failed to present a genuine issue of material fact with regard to his copyright claims, he has failed to raise a genuine issue of material fact with regard to his breach of contract claims. In Florida, as in other states, "[t]he elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP*, 137 So. 3d 1081, 1094-95 (Fla. 3d DCA 2014). For the reasons set forth above, plaintiff has neither presented nor identified evidence suggesting defendants have breached the settlement agreement. Accordingly, summary judgment also should be granted in favor of defendants on plaintiff's breach of contract claims.

III.   Conclusion

In sum, the 2013 Agreement affirmatively authorized MPC to sell license plates bearing plaintiff's artwork along with MPC's CMI on Works 4 through 24 so long as those plates were manufactured prior to April 19, 2013. In the case of Works 1 through 3, MPC was released from claims related to sales prior to April 19, 2013, and no further use was permitted. There is no evidence the license plates plaintiff saw in the stream of commerce were manufactured or sold after April 19, 2013. The evidence shows the contrary. There thus exists no genuine issue of material fact with

Page 12 of 13

regard to any of plaintiff's claims, and defendants are entitled to summary judgment as a matter of law on all of them.[3]

Accordingly, it is respectfully RECOMMENDED:

1.   That Defendants' Dispositive Motion for Summary Judgment (doc. 44) be GRANTED and plaintiff's claims against the defendants DISMISSED with prejudice.

2.   That judgment be entered in favor of the defendants.

3.   That the clerk be directed to close the file.

At Pensacola, Florida, this 31st day of August, 2018.

/s/ Charles J. Kahn, Jr.
**CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE**

---

[3] Considering plaintiff's claims against MPC fail as a matter of law, plaintiff's claims against the individual defendants are due to be dismissed as well because plaintiff seeks to hold them vicariously liable for the alleged actions of MPC.

Case No. 3:16cv422-MCR-CJK

**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.